Argued July 29, decided August 25, 1908.

## STATE *v.* WAYMIRE.

[97 Pac. 46.]

NUISANCE—CRIMINAL PROSECUTION—STATUTES—CONSTRUCTION—"OF-
FENSE AGAINST GOOD MORALS."

1. Section 1930, B. & C. Comp., punishing any person committing any
act which grossly injures the person of another, or which grossly disturbs
the public peace or health, or openly outrages the public decency and is
injurious to public morals, not otherwise made punishable, covers offenses
against the public peace, health, and morals not otherwise made punish-
able and known at common law as indictable nuisances; and at common
law whatever tends to corrupt society is an "offense against good morals,"
and is punishable as a nuisance, and such act need not be a continuous
one, but may consist of a single act, and it may not affect the public at
large, but only such as come in contact with it.

SAME—INFORMATION—SUFFICIENCY.

2. An information which alleges that defendants, one of them a fe-
male, in pursuance of a conspiracy for that purpose, laid a plan to get
prosecutor in an indecent and compromising situation with the female in
a public place, and while in such position to direct the attention of a
large concourse of citizens to them, thereby making a public exposition
of their attitude, followed by specification of acts committed to carry out
the conspiracy, resulting in an apparent criminal assault by prosecutor
on the female, charges an act which openly outrages public decency and
is injurious to good morals, and is within Section 1930, B. & C. Comp.,
punishing any person who shall commit any act which outrages public
decency and is injurious to public morals, etc.

INDICTMENT AND INFORMATION—DUPLICITY.

2. An information alleging that defendants, one of them a female, in
pursuance of a conspiracy for that purpose, laid a plan to get prosecutor
in an indecent and compromising situation with the female in public, and
while in such position to direct the attention of citizens to them, thereby
making a public exposition of their attitude, and specifying acts commit-
ted by the female defendant to carry out the conspiracy, and that the co-
defendant, in pursuance of the conspiracy, on hearing the outcry of the
female broke the door of the office of prosecutor, in which the female and
prosecutor were, and attracted thereby a concourse of citizens to witness
the compromising attitude of the female and prosecutor, etc., charged only
one crime; the allegation that codefendant broke the door of the office
of the prosecutor merely charging an act in pursuance of the conspiracy
and in furtherance thereof, constituting a part of the crime charged, and
not an independent one.

CRIMINAL LAW—TRIAL—POLLING JURY.

4. A trial is not concluded until the verdict is received and recorded,
and under Section 150, B. & C. Comp., the jury may be polled on the re-
quest of either party after the verdict is given and before it is filed.

SAME.

5. Under Section 1378, B. & C. Comp., providing that where an indict-
ment is for a misdemeanor, the trial may be had in the absence of the
accused, where he appears by counsel, one charged with a misdemeanor
may be present at the rendition of the verdict, either in person or by
counsel, for the purpose of polling the jury, as authorized by Section 150.

SAME—WAIVER.

6. The right granted by Section 1378, B. & C. Comp., authorizing one charged with a misdemeanor to be present either in person or by counsel at the rendition of the . verdict, may be waived, either expressly or impliedly; and where one so charged on bail, and is present either in person or by counsel at the commencement of and during the trial until the cause is submitted to the jury, and thereafter voluntarily departs from the court before its adjournment and without leave, he waives the right to be present on the rendition of the verdict.

SAME.

7. Accused, charged with a misdemeanor and on bail, and his counsel, voluntarily retired from the court, without leave, after the cause was submitted to the jury, and before the court had adjourned. A deputy sheriff had promised accused's counsel to telephone him on the jury being ready to report. The deputy sheriff failed to comply with his promise, and the court received the jury's verdict in the absence of the accused and his counsel. *Held*, that the court was authorized to receive the verdict in their absence; it being voluntary.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

The defendants, Belle Waymire and E. E. Radding, were indicted, tried and convicted upon an information charging them with an indecent and immoral act, in violation of Section 1930, B. & C. Comp., and from the judgment and sentence that followed, they appeal.

Statement by MR. CHIEF JUSTICE BEAN.

The charging part of the information is as follows:

"That during all the times hereinafter mentioned, the city of Portland, in the county of Multnomah, and State of Oregon, was a municipal corporation, existing in said State. That Harry Lane was at all of the times hereinafter mentioned the duly elected, qualified, and acting mayor of said city of Portland. That on the 26th day of September, A. D. 1907, in the said city of Portland, county and State aforesaid, the said Belle Waymire and the said E. E. Radding, then and there willfully, and unlawfully conspiring with each other, committed an act which then and there grossly injured the person and property, to-wit, the reputation, of another, and which then and there grossly disturbed the public peace, and which then and there openly outraged the public decency, and was then and there injurious to public morals, to-wit: That the said Belle Waymire and E. E. Radding then and there so willfully conspiring, confederating, and agreeing thereto, with the intent then and there to defame

and blacken the reputation of him, the said Harry Lane, as aforesaid, and to falsely make it appear to the public, that the said Harry Lane was then and there committing a crime, to-wit, the crime of assault with intent to commit rape by the said Harry Lane as aforesaid, upon the person of her, the said Belle Waymire, by force and arms and against her consent, the said Belle Waymire did then and there in a public place, to-wit, in the Hamilton Building, in the city of Portland, set upon him, the said Harry Lane, and grasp and hold his person, and tear and dishevel his clothing, and seek to indecently expose his person, and did make a loud outcry and falsely accuse to the persons who were then and there assembled at said public place as aforesaid, the said Harry Lane of then and there attempting to forcibly ravish her, the said Belle Waymire, against her consent. And the said Belle Waymire and the said E. E. Radding, so unlawfully and willfully conspiring together thereto· as aforesaid, the said E. E. Radding, in pursuance of the said conspiracy, confederation and agreement, and with the intent as aforesaid, did then and there willfully and unlawfully lie in wait in said public place, to-wit, in said Hamilton Building, in said city of Portland, and did then and there, upon hearing the said outcry of the said Belle Waymire, break and shatter the door of the said Harry Lane's office in said building, in which the said Belle Waymire and he, the said Harry Lane, then and there were, and then and there ·attracted thereby a concourse of the citizens at said time and in said public place, who then and there witnessed the said pretended assault in said public place and heard the said accusation, and that the said acts of said Belle Waymire and of the said E. E. Radding, so unlawfully and willfully conspiring together in said public place, and with the intent as aforesaid, was then and there an act which grossly injured the person and property, to-wit, the reputation, of the said Harry Lane as aforesaid, and which then and there grossly disturbed the public peace of the city of Portland, and which then and there openly outraged the public decency of the people of the said city of Portland and State of Oregon, and was then and there injurious to the public morals of the said city and State, and against the statutes in such cases made and provided."

The defendants were arrested and duly admitted to bail pending trial. They subsequently demurred to the information on the ground that the facts stated do not constitute a crime and that more than one crime is charged therein.. The demurrer was overruled, defendants pleaded not guilty, and a trial was had. The cause was submitted to the jury, and they retired for deliberation about 5 o'clock in the afternoon; the court at the time notifying counsel to have the defendants in court to receive the verdict, if one should be rendered. The jury returned a verdict of guilty about one hour later, and neither of the defendants, nor their counsel, were in court at the time, and the verdict was received in their absence. A motion for a new trial was made, and defendants were sentenced to imprisonment in the county jail, from which judgment they appeal, assigning as errors the overruling of the demurrer to the indictment and the receiving of the verdict in the absence of themselves and their counsel.                                AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Seneca Fouts.*

For the State there was a brief over the names of *Mr. George J. Cameron,* District Attorney, *Mr. Dan J. Malarkey, Mr. John Manning,* and *Mr. Richard W. Montague,* with oral arguments by *Mr. Cameron, Mr. Montague* and *Mr. Manning.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. It is contended that the acts charged in the indictment do not constitute a crime within the meaning of the statute under which the information was filed, and which provides "that if any person shall willfully and wrongfully commit any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages the public decency and is injurious to public morals, such person, if no punishment is expressly prescribed therefor

by this Code, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one month nor more than six months, or by fine not less than fifty nor more than two hundred dollars." This statute was intended by its language to cover offenses against the public peace, the public health, and the public morals, not elsewhere made punishable by the Code, and which were known at common law as "indictable nuisances." *State* v. *Bergman,* 6 Or. 341; *State* v. *Nease,* 46 Or. 433 (80 Pac. 897); *State* v. *Ayres,* 49 Or. 61 (88 Pac. 653). It is true that the word "nuisance" does not appear in the statute; but, as said in *State* v. *Nease, supra,* "the language used is essentially descriptive of the general character of such offenses, and quite equivalent thereto." We are, therefore, required to resort to the common law to ascertain what act "grossly outrages public decency and is contrary to good morals," as applied to criminal prosecutions.

2. There was a time when it was thought that the subject of morals, public and private, belonged exclusively to the ecclesiastical courts, and therefore but little mention is made in the common-law reports of punishments for offenses *contra bonos mores* until the reign of Charles II, when Sir Charles Sedley was indicted and severely punished for standing naked on a public balcony in the city of London. 1 Keble, 620, 17 Howell's St. Tr. 154. This case was subsequently frequently cited, often doubted, and sometimes followed, until *Rex* v. *Delaval,* 3 Burr. 1438, which was a prosecution for conspiracy to place a young women in the possession of a man for prostitution, and publicly to exhibit her as a kept mistress, when Lord Mansfield put the question at rest by holding that the common-law courts, being *custos morum* of the people, had jurisdiction of all offenses contrary to good morals and public decency, citing in support of his conclusion the opinion of Lord HARDWICKE, who ordered the prosecution of a man for formerly assign-

ing his wife to another as "being grossly against public decency and public morals." It is, therefore, now settled that acts of public indecency, such as lewdness (Wharton, Criminal Law, 1432), exhibiting obscene pictures (*Commonwealth* v. *Sharpless*, 2 Serg. & R. [Pa.] 91: 7 Am. Dec. 632), standing naked on a balcony in a public place (1 Keble, 620), conspiring to place a young woman in possession of another for purposes of prostitution (*Rex* v. *Delaval, supra*), casting a dead body into a river (Kanavan's Case, 1 Greenl. [Me.] 226), the publication of an indecent book (2 Strange, 789), and the like, are indictable and punishable at common law because they outrage public decency and are injurious to good morals. Mr. Chief Justice TILGHMAN says, in *Commonwealth* v. *Sharpless, supra,* that the true principle upon which this doctrine rests is that whatever tends to corrupt society is a breach of the peace and an offense against good morals, and the courts, being guardians of the public morals, have jurisdiction thereof.

3. The authorities cited show that the crime need not be a continuous one, but may consist of a single act, and that it need not affect the public at large, but only such as come in contact with it. Now, applying these principles to the present case: The defendants are charged by the information of having, in pursuance of a conspiracy for that purpose, laid a plot or plan to get the prosecuting witness in an indecent and compromising situation with one of the defendants in a public place, and, while in such position, to direct the attention of a large concourse of citizens to them, thereby making a public exposition of their indecent and compromising attitude. This, we think, if true, was an act which openly outraged public decency, was injurious to good morals, and is within the statute.

It is claimed that the indictment charges more than one crime, because it alleges that the defendant Radding broke and shattered a door of the prosecuting witness'

office; but this was merely an act committed in pursuance to the general purpose of the conspiracy and in furtherance thereof, constituting a part of the crime charged, and not an independent one.

4. Error is also assigned based on the action of the court in receiving the verdict in the absence of the defendants and their counsel. The statute (Section 1378, B. & C. Comp.) provides that, if the indictment be for a misdemeanor, the trial may be had in the absence of the defendant, if he appear by counsel, and (Section 150) that after the verdict is given and before it is filed the jury may be polled on the request of either party. It is settled that a trial is not concluded until the verdict is received and recorded.

5. And therefore, under the statute, a defendant charged with a misdemeanor, has the right to be present at the rendition of the verdict, either in person or by his counsel, for the purpose of polling the jury, if he so desire, and if he is in custody, or otherwise deprived of this right without his fault, the verdict cannot properly be taken in the absence of himself or counsel.

6. The right, however, is conferred upon him for his own protection and benefit, and, like many other rights accorded him by law, may be waived, either expressly or impliedly; and by the weight of authority, when a defendant charged with a misdemeanor is on bail, and is present either in person or by his counsel at the commencement of and during the trial, until the cause is submitted to the jury, and afterwards voluntarily departs from the court before its adjournment and without leave, he will be deemed to have waived the right to be present on the rendition of the verdict, and it may be legally received in his absence. 12 Cyc. 528; 22 Enc. Pl. & Pr. 929. Indeed, many of the courts hold that this rule will apply in a trial for a felony. *Frey* v. *Calhoun Circuit Judge,* 107 Mich. 130 (64 N. W. 1047); *Commonwealth* v. *McCarthy,* 163 Mass. 458 (40 N. E. 766);

*Sahlinger* v. *People,* 102 Ill. 241; *State* v. *Way,* 76 Kan. 928 (93 Pac. 159). The theory is that it is the duty of the defendant to be present until the close of the trial, and if he voluntarily absents himself the court is not obliged to await his pleasure, but may proceed without him.

7. Now, in this case it appears that the defendants and their counsel, without leave, voluntarily retired from the court after the case had been submitted to the jury and before the court had adjourned; and under the authorities this operated as a waiver of their right to be present at the rendition of the verdict, and authorized the court to receive it in their absence. The failure of the deputy sheriff to telephone defendants' counsel when the jury were ready to report, in accordance with his promise, cannot affect the question, or make the absence of counsel without the consent of the court any the less voluntary.

Judgment affirmed.                    AFFIRMED.