Petition for review allowed November 3, argued on review
December 6, 1971, sentence set aside, case remanded
for re-sentencing June 1, 1972

# JOSEPH MARSHALL BUCHEA, *Petitioner, v.*
# SULLIVAN, *Respondent.*

### 497 P2d 1169

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*James L. Carney,* Assistant Attorney General, Salem, argued the cause for respondent.

HOLMAN, J.

Consideration of this case was taken on a petition for review from the denial of post-conviction relief by the Court of Appeals. 6 Or App 77, 485 P2d 1244 (1971). The petitioner pleaded guilty to attempted burglary in a dwelling. The trial judge ordered a presentence investigation report to be prepared for his consideration which the petitioner, through his attorney, requested permission to see prior to his being sentenced. The request was denied, and, thereafter, the trial judge sentenced petitioner to the maximum sentence authorized.

The sole question involved is whether a person who is convicted of a crime has a right under the Sixth[1] and the Fourteenth[2] Amendments to the United States Constitution and Article I, Section 11,[3] of the Oregon Constitution to see a presentence report considered by a judge in his determination of sentence. The trial court and the Court of Appeals held that such person does not.

ORS 137.080 provides for a summary hearing on aggravation or mitigation of punishment. ORS 137.090 then provides as follows:

"The circumstances which are alleged to justify aggravation or mitigation of the punishment shall be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken out of court at such time and

---

[1] "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

[2] "* * * nor shall any State deprive any person of * * * liberty, * * * without due process of law; * * *."

[3] "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel; * * *."

place, and upon such notice to the adverse party, and before such person authorized to take depositions, as the court directs. *The court may consider the report of presentence investigation conducted by probation officers pursuant to ORS 137.530.*[①] *A copy of such report may be made available to counsel for the defendant and the state a reasonable time before pronouncement of sentence."* (Emphasized material was the subject of amendment by Oregon Laws 1965, ch 400, § 1.)

1. The Minutes of the House and Senate Judiciary Committees of the 1965 Legislative Assembly and the recommendation of the Practice and Procedure Committee of the Oregon State Bar② disclose that the language of the amendment was used because some trial judges thought that they *could not* disclose *any* information contained in the presentence report. The language was intended to make plain that trial courts *could* make information available, not that they *had to* make it available or be guilty of an abuse of discretion, as has been suggested.③

① ORS 137.530:

"Probation officers, when directed by the court, shall fully investigate and report to the court in writing on the circumstances of the offense, criminal record, social history and present condition and environment of any defendant; and unless the court directs otherwise in individual cases, no defendant shall be placed on probation until the report of such investigation has been presented to and considered by the court. Whenever desirable, and facilities exist therefor, such investigation shall include physical and mental examinations of such defendants."

② 1964 Oregon State Bar Committee Reports 68.

③ In the dissenting opinion by Tongue, J., it is pointed out that Fed R Crim P § 32(c) has been construed by some federal courts as granting *judicial discretion* to federal trial judges to disclose all or part of a presentence investigation and, thus, the discretion is subject to judicial review. U. S. v. Knupp, 448 F2d 412, 413 (4th Cir 1971); U. S. v. Dockery, 145 US App DC 9, 447 F2d 1178, 1183 (DC Cir), *cert. denied,* 404 US 950, 92 S Ct 299, 30 L Ed 2d 266

The question of a defendant's right to be informed of the contents of his presentence investigation report has recently stimulated much debate.⑦ The purpose

(1971); Good v. U.S., 410 F2d 1217, 1221 (5th Cir 1969), *cert. denied,* 397 US 1002, 90 S Ct 1131, 25 L Ed 2d 413 (1970). A federal rule means, of course, what federal courts say it does. We are dealing here with a statute enacted by the Oregon Legislature.

⑦ Authorities opposed to complete, automatic disclosure of presentence reports to defendants and/or to their counsel include: J. B. Parsons, *The Presentence Investigative Report Must Be Preserved as a Confidential Document,* 28 Federal Probation, March 1964, p. 3; R. C. Thompsen, *Confidentiality of the Presentence Report: A Middle Position,* 28 Federal Probation, March 1964, p. 8; J. B. Barnett and D. H. Gronewold, *Confidentiality of the Presentence Report,* 26 Federal Probation, March 1962, p. 26; C. C. Hincks, *In Opposition to Rule 34(c)(2), Proposed Federal Rules of Criminal Procedure,* 8 Federal Probation, October-December, 1944, p. 3; P. KEVE, THE PROBATION OFFICER INVESTIGATES: A GUIDE TO THE PRESENTENCE REPORT 14-15 (1960); A. Roche, *The Position for Confidentiality of the Presentence Investigation Report,* 29 Albany L Rev 206 (1965); L. J. Sharp, *The Confidential Nature of Presentence Reports,* 5 Catholic UAL Rev 127 (1955).

Authorities supporting compulsory and total or, at least, very liberal disclosure practices are: PRESIDENT'S COMMISSION ON LAW ENFORCEMENT AND ADMINISTRATION OF JUSTICE, The Challenge of Crime in a Free Society 144-45 (1967); PRESIDENT'S COMMISSION ON LAW ENFORCEMENT AND ADMINISTRATION OF JUSTICE, Task Force Report: The Courts 20 (1967); AMERICAN BAR ASSOCIATION, Project on Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures 200-28 (Approved draft 1968); COMMITTEE ON RULES OF PRACTICE AND PROCEDURE OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, Advisory Committee Note, Proposed Amendments to Criminal Rules, 48 FRD 553, 616-18 (1970); R. S. Lehrich, *The Use and Disclosure of Presentence Reports in the United States,* 47 FRD 225 (1969); PAPERS DELIVERED AT THE INSTITUTE ON SENTENCING, S. Rubin, *Sentences Must be Rationally Explained,* 42 FRD 175, 203 (1968); AMENDMENTS TO RULES ON CIVIL PROCEDURE—ADMIRALTY AND MARITIME—CRIMINAL PROCEDURE WITH REPORT OF THE JUDICIAL CONFERENCE, W. O. Douglas, *Mr. Justice Douglas' Statement* (dissenting from promulgation of Federal Rules of Criminal Procedure § 32(c)(2)), 39 FRD 69, 278 (1966); P. W. TAPPAN, CRIME, JUSTICE, AND CORRECTION 553-59 (1960); AMERICAN LAW INSTITUTE, Model Penal Code,

(Tentative Draft No. 2, 1954) § 7.07(5), Comment 54-55; M. N. Bach, *The Defendant's Right of Access to Presentence Reports,* 4 Crim L Bull 160 (1968); B. Schaffer, *The Defendant's Right of Access to Presentence Reports,* 3 Crim L Bull 674 (1967); Note, *Disclosure of Presentence Reports: A Constitutional Right to Rebut Adverse Information by Cross-Examination,* 3 Rutgers-Camden L J 111 (1971); J. P. Higgins, *In Response to Roche,* 29 Albany L Rev 225 (1965); J. P. Higgins, *Confidentiality of Presentence Reports,* 28 Albany L Rev 12 (1964); Note, *Right of Criminal Defender to Challenge Report Used in Determining Sentence,* 49 Colo L Rev 567 (1949); Note, *Procedural Due Process at Judicial Sentencing for Felony,* 81 Harv L Rev 821 (1968); C. E. Wyzanski, Jr., *A Trial Judge's Freedom and Responsibility,* 65 Harv L Rev 1281 (1952); R. Guzman, *Defendant's Access to Presentence Reports in Federal Criminal Courts,* 52 Iowa L Rev 161 (1966); W. D. Lorensen, *The Disclosure to Defense of Presentence Reports in West Virginia,* 69 W Va L Rev 159 (1966-67).

The debate has been carried to the courts. Federal cases which have sought to curtail discretion not to release the report under Federal Rules of Criminal Procedure § 32(c)(2) are: United States ex rel Brown v. Rundle, 417 F2d 282 (3d Cir 1969); Baker v. United States, 388 F2d 931 (4th Cir 1968); Smith v. United States, 223 F2d 750 (5th Cir 1955); and Stephan v. United States, 133 F2d 87 (6th Cir), *cert. denied,* 318 US 781, 63 S Ct 858, 87 L Ed 1148 (1943). State cases granting the defendant access to the report include State v. Harmon, 147 Conn 125, 157 A2d 594 (1960); State v. Pope, 257 NC 326, 126 SE2d 126 (1962); and Jones v. State, 477 P2d 85 (Okla Cr 1970).

Several recent federal cases, however, have reaffirmed the broad discretion of federal sentencing judges in refusing to release presentence reports. *See, e.g.,* United States v. Bakewell, 430 F2d 721 (5th Cir), *cert. denied,* 400 US 964, 91 S Ct 366, 27 L Ed 2d 384 (1970); United States v. Rubin, 433 F2d 442 (5th Cir 1970), *cert. denied,* 401 US 945, 91 S Ct 961, 28 L Ed 2d 228 (1971); United States v. Fischer, 381 F2d 509 (2d Cir 1967), *cert. denied,* 390 US 973, 88 S Ct 1064, 19 L Ed 2d 1185 (1968); United States v. Crutcher, 405 F2d 239 (2d Cir 1968), *cert. denied,* 394 US 908, 89 S Ct 1018, 23 L Ed 2d 219 (1969); United States v. Trigg, 392 F2d 860 (7th Cir), *cert. denied,* 391 US 961, 88 S Ct 1863, 20 L Ed 2d 874 (1968); Thompson v. United States, 381 F2d 664 (10th Cir 1967); United States v. Durham, 181 F Supp 503 (DDC), *cert. denied,* 364 US 854, 81 S Ct 83, 5 L Ed 2d 77 (1960).

The only recent state decision denying the right of access to the presentence report is State v. Celaya, 107 Ariz 175, 484 P2d 7 (1971).

For a summary of the developments in the problem area in the federal courts, *see* 2 C. Wright, Federal Practice and Prcedure 389, 394, §§ 522, 524 (1969).

of presentence investigations must be kept in mind as well as the arguments for and against the compulsory disclosure of such reports. The theory behind the use of presentence investigations is that the sentence should be individualized to the offender: it should fit him, not merely the crime. If criminal correction is intended to effect reformation and rehabilitation, as well as to provide protection to the public, the sentence should be tailored to the defendant's life history and personal characteristics.

The proponents of mandatory disclosure of the contents of the reports simply say that the intolerable possibility exists that without such disclosure a defendant will be required to serve an unjustifiably harsh sentence because he has no opportunity to learn of, or to rebut, inaccuracies in his presentence report. They argue that a procedure which permits such a possibility does not afford due process or effective representation by counsel.[9]

The opponents of mandatory disclosure say that such disclosure would: (1) dry up the best sources of information because confidentiality could not be promised to relatives and intimates who are relied on to provide critical information about the defendant's life

---

[9] It is interesting to note that it is only those who are advocates of the right of the individual who take this position. Except for the American Bar Association's minimum standards, no one has taken the position that prosecutors should be entitled to see presentence reports so that they can correct misinformation favorable to defendant or supplement the report with relevant information which is damaging to defendant and which has been omitted. If disclosure is made, it would seem that it should be made available to the prosecution as well as to the defendant, because the public also would be entitled to be protected from dangerous persons who might otherwise be at large. This is particularly true in view of the fact that the chances of the omission because of non-discovery of correct unfavorable information would seem to be greater than the chances of the inclusion of incorrect information.

and character; (2) under some circumstances, endanger those who furnish information; (3) alienate defendant from family and close friends who have provided information and whose continued close relationship with defendant may be necessary to his rehabilitation; (4) make adjustment and treatment of the defendant more difficult than it otherwise would be because of the trauma generated by abrupt disclosure of the diagnoses of his mental and emotional conditions; (5) proliferate and unduly protract the sentencing process.

The Supreme Court of the United States has not directly decided if the United States Constitution requires disclosure of presentence information to a defendant or his lawyer. Moreover, its opinions which relate to the subject are somewhat difficult to reconcile.

In *Townsend v. Burke*, 334 US 736, 68 S Ct 1252, 92 L Ed 1690 (1948), the defendant pleaded guilty and was sentenced without benefit of counsel by a judge who was under the misapprehension that defendant had previously been found guilty of several crimes. The fact was that one of the charges mentioned by the judge as influencing his decision had been dismissed and the defendant had been found not guilty of two others. In holding that defendant had not received due process, the Court stated:

"We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced

on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand." 334 US at 740-41.

If a sentence based upon a false premise which the defendant has no opportunity to correct does not afford due process, an argument can be made that any procedure which has no safeguard against such an occurrence does not afford due process and that it is immaterial whether the misinformation came from a presentence investigation or from other sources. However, in assessing the impact of *Townsend,* it should not be overlooked that there were no countervailing public interests or values which would have been threatened by affording Townsend an opportunity to correct the judge's misapprehension about Townsend's prior criminal record.

A year later, the Court decided *Williams v. New York,* 337 US 241, 69 S Ct 1079, 93 L Ed 1337 (1949). A jury convicted Williams of first-degree murder and recommended life in prison. The judge, however, not being bound by the recommendation, sentenced Williams to death. The death sentence was imposed by reason of additional information concerning the defendant's background and character which was obtained by the judge from a presentence investigation. This information was recited by the judge at the time of sentence and no effort was made by the defendant or by his lawyer to refute it. The defendant contended that he was sentenced without constitutional due process because the sentence was based upon information which he had no opportunity to refute and which was supplied by witnesses whom he had no oppor-

tunity either to confront or to cross-examine. The Court held that the defendant was not deprived of due process and that different evidentiary rules applied during trial than at sentencing. Mr. Justice Black stated for the Court:

"In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." 337 US at 246-47.

\* \* \* \* \*

"\* \* \* We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be

unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues.

"The considerations we have set out admonish us against treating the due-process clause as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence. * * * The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice." 337 US at 250-51.

The right which was foreclosed in *Williams* was not that of seeing the report from which the judge had secured his information, but, rather, that of confronting and cross-examining the witnesses who supplied the information as well as that of offering evidence in rebuttal. However, it follows that part of the value in being given the opportunity to see the report is that of disputing any erroneous information contained therein by cross-examination and the presentation of evidence. These opportunities the Court foreclosed by its opinion. *Also see Williams v. Oklahoma,* 358 US 576, 584-85, 79 S Ct 421, 3 L Ed 2d 516 (1959). However, it should not be overlooked that in *Williams v. New York, supra,* the defendant and his lawyer had an opportunity to tell the judge that the information

upon which Williams was being sentenced was erroneous if, in fact, such was the case.

The last instance in which the Supreme Court of the United States has said anything relating to the subject was in *Gregg v. United States,* 394 US 489, 89 S Ct 1134, 22 L Ed 2d 442 (1969). In *Gregg,* the issue was whether the judge had read a presentence report prior to conviction in violation of Rule 32(c)(1) of the Federal Rules of Criminal Procedure. The Court said in dictum as follows:

"* * * Presentence reports are documents which the rule does not make available to the defendant as a matter of right. There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged * * *." 394 US at 492.

This court, too, has written opinions upon matters related to the present issue which are not altogether harmonious. In *Admire v. Gladden,* 227 Or 370, 362 P2d 380 (1961), *cert. denied,* 368 US 971, 82 S Ct 449, 7 L Ed 2d 400 (1962), the defendant was convicted of rape. At the time of sentence, the judge considered a psychiatric report which the defendant was also permitted to read. We said as follows:

"Plaintiff's principal complaint seems to be that he received a twenty-year sentence while two others who had committed the same crime with the same girl received only two years, and that the sentence he received was due to information the trial judge received not in his presence.

"It is not a denial of due process for a trial judge to inform himself of matters connected with the commission of a crime that were not developed in the course of a trial. *In Re Application of Hodge,* 262 F2d 778; *Hoover v. U. S.,* 268 F2d 787; *Williams*

*v. New York,* 337 US 241, 69 S Ct 1079, 93 L Ed 1337; 16A CJS 683, Constitutional Law § 593." 227 Or at 375.

In *Coffman v. Gladden,* 229 Or 99, 366 P2d 171 (1961), the defendant objected to the use of unsworn statements of his prior criminal record at the time of his sentence. We held that such use was proper. *Also see Barber v. Gladden,* 228 Or 140, 143, 363 P2d 771 (1961), *cert. denied,* 369 US 838, 82 S Ct 869, 7 L Ed 2d 843 (1962).

In *State v. Scott,* 237 Or 390, 390 P2d 328 (1964), the defendant objected to the use of a presentence report because neither he nor the state had requested one. He also contended that the report contained material which was inadmissible in a statutory aggravation and mitigation hearing. Specifically, he objected to the inclusion of a list of arrests as distinguished from convictions. He also objected to the hearsay evidence in the report. We held that the arrest reports were properly considered by the sentencing judge as an indication of the character and associates of the defendant and that hearsay evidence could be used for sentencing purposes. We said:

"The defendant objected generally to the hearsay evidence in the report. In *Coffman v. Gladden,* 229 Or 99, 102, 366 P2d 171 (1961), and earlier decisions cited therein, we held unsworn statements could be received by the trial court in considering the sentence to be imposed. *Williams v. New York,* 337 US 241, 69 S Ct 1079, 93 L ed 1337 (1949), is now cited for the proposition that hearsay evidence is admissible in the sentencing procedure. *Hoover v. United States,* 268 F2d 787 (10th Cir 1959). In the *Williams* case, however, the accuracy of the hearsay statements was not disputed, as the court pointed out.

"The Oregon statute requires the probation

officer to report on the 'circumstances of the offense, criminal record, social history and present condition and environment of any defendant.' ORS 137.530. The California court said of a similar statute: 'A probation officer could not make any investigation and report of the nature required by Penal Code, section 1203, if restricted to the rules of evidence. Much of the prior record and history of a defendant, as well as circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information. It is clear that Penal Code, section 1203, contemplates the inclusion of hearsay matter in the probation officer's report.' *People v. Valdivia,* 182 Cal App2d 145, 148, 5 Cal Rptr 832 (1960). It was not error for the trial court to consider the hearsay statements in the report." 237 Or at 400-01.

Since the use of hearsay evidence has been approved, it must follow that the right of confrontation and cross-examination is not vital to the receipt of all information which bears upon the sentencing process.

Our most recent opinion which touches on the problem before us now is *Gebhart v. Gladden,* 243 Or 145, 412 P2d 29 (1966). Gebhart was granted probation which was later revoked. He was sentenced at a hearing where he was without services of counsel. We held that sentencing was part of the trial process and that defendant was entitled to the representation of counsel at that time. We quoted with approval from *Martin v. United States,* 182 F2d 225, 20 ALR2d 1236 (5th Cir 1950):

" 'The very nature of the proceeding at the time of imposition of sentence makes the presence of defendant's counsel at that time necessary if the constitutional requirement is to be met. There is then a real need for counsel. The advisability of an appeal must then, or shortly, be determined. Then

> is the opportunity afforded for presentation to the Court of facts in extenuation of the offense, or in explanation of the defendant's conduct; to correct any errors or mistakes in reports of the defendant's past record; and, in short, to appeal to the equity of the Court in its administration and enforcement of penal laws. Any Judge with trial Court experience must acknowledge that such disclosures frequently result in mitigation, or even suspension, of penalty. That it is also true that such discussion sometimes has a contrary result, does not detract from the fact that the nature and possibilities of this important stage of the proceedings are such as make the absence of counsel at this time presumably prejudicial.' " 243 Or at 148-49.

Certainly, the services of a lawyer at the time of sentence cannot be as effective as they otherwise would be when the lawyer has been informed of the basis upon which the court is sentencing his client. He cannot call to the court's attention any claimed errors or mistakes in the report.

■ No constitutional questions of consequence are cut and dried. Their solution requires the weighing of competing interests; the constitutional question in this case is no exception. The interests of both the defendant and the public are promoted by a full report of the defendant's past history to the sentencing judge. It is our judgment that in some considerable measure such information would be curtailed by requiring complete disclosure of all information used in the sentencing process. We hold that the value of completely informing the judge outweighs the admitted risk of sentencing a defendant on misinformation developed in the presentence investigation. We make this decision, noting that there are no significant empirical studies to guide us.

■ However, if the information in the presentence report can affect his sentence and it is readily identifiable, public in nature, and none of the reasons for non-disclosure can apply to it, constitutional fairness requires its disclosure. ORS 137.530 provides that the presentence report shall contain "* * * the circumstances of the offense, criminal record, social history and present condition and environment of any defendant; * * *." Certainly, no argument can be made for non-disclosure of information contained in the presentence report which concerns a defendant's contact with the law by way of prior arrests, trials and convictions, which are all generally referred to as his criminal record and which information comes from sources such as court records and police records and reports. None of the reasons given for non-disclosure have any application to this type of information. The source of such information would not dry up to presentence investigators if the information were regularly disclosed to defendants. This is information which has already been developed without the protection of confidentiality and which has become either public knowledge or public in the sense that it has been collected by and reposes with a public agency. It is our opinion that it would be a deprivation of due process and of the services of counsel to withhold such information inasmuch as no countervailing public interest requires its non-disclosure.

The thrust of *Townsend* is that it is a deprivation of due process to base a sentence on erroneous information when, because the defendant has no counsel, he has no opportunity to point out the court's misapprehension. In *Townsend* the Court was *concerned with presentence information of a public nature.* On the other hand, the primary thrust in *Williams v. New*

*York,* 337 US 241, 69 S Ct 1079, 93 L Ed 1337 (1949), was a concern for information which normally would be "unavailable" except through a presentence report. Therefore, whatever *Williams* implies as to the lack of the right to disclosure, it is relevant only to information which is not already public in nature. It is our belief that *Townsend* must still be heeded when sentencing judges are dealing with information which is readily identifiable and under any circumstances *not* susceptible to the dangers which the Court guarded against in *Williams*. In other words, when information concerning a defendant's prior contact with the law is relied upon which already has become public in nature in the sense that some court or police agency is its repository, the defendant and his counsel must have an opportunity to point out to the court any error that is involved. They cannot be deemed to have such opportunity unless they know what that information is.

It is interesting to note that the parade of "horribles" used by the proponents of unlimited disclosure —those cases in which obvious miscarriages of justice in sentencing have occurred because of a misinformed judge—mainly include those in which the misinformation concerned the defendant's prior record.[9] It may

---

[9] The most notorious case is State v. Pohlabel, 61 N.J. Super 242, 160 A2d 647 (App Div 1960), in which the defendant had been convicted of passing several bad checks. He was given consecutive sentences for each check, amounting to 21 to 35 years in jail. After eight years' imprisonment, he was able to obtain his presentence report, which indicated he had spent most of his earlier life in prison; but, in fact, he had served only four years in prison for auto theft before the conviction on the bad check charges. When the error was pointed out, the prosecutor joined defendant's motion for a reduced sentence, which was granted.

State v. Killian, 91 Ariz 140, 370 P2d 287 (1962), was the case of a defendant convicted of possession of marijuana as a first-time offender and received a seven-to-ten-year term. His presentence

be that other instances of misinformation have occurred which were more difficult to ascertain and, therefore, have not readily attracted attention. But it is peculiar that there have not been more cases reported in which defendants claim to have been unfairly sentenced on the basis of misleading non-public information provided the sentencing judge.

It has been suggested that it is unnecessary to hold that the matter is one of constitutional consequence in order to require a trial judge to disclose such information. In *State v. Kunz*, 55 NJ 128, 259 A2d 895 (1969), the Supreme Court of New Jersey held that "as a matter of fundamental fairness" and "as a matter of rudimentary fairness" a defendant was entitled to see the presentence report and to be heard concerning it. Though "fundamental" and "rudimentary" fairness required disclosure, the court was not "prepared to

report suggested that several charges of contributing to the delinquency of a minor had been dropped in exchange for his guilty plea. The delinquency charges filed against defendant were erroneously treated by the report as stemming from an alleged rape; but, in fact, they were related to circumstances of a much less serious nature. The Arizona Supreme Court was moved to reduce the term to three to five years.

Professor Keve, in THE PROBATION OFFICER INVESTIGATES: A GUIDE TO THE PRESENTENCE REPORT at 19, relates an incident where an attorney was informed by a probation officer that the defendant had been arrested elsewhere for forgery a few years earlier; the attorney made his own check of the record and was able to show that the forgery arrest belonged to another person of the same name. A similar report is quoted by R. S. Lehrich, *The Use and Disclosure of Presentence Reports in the United States*, 47 FRD 225, 243-44 (1969), who asserts such errors occur frequently.

*See* Townsend v. Burke, 334 US 736, 68 S Ct 1252, 92 L Ed 1690 (1948), and United States ex rel Jackson v. Myers, 374 F2d 707 (3d Cir 1967), for two cases in which trial judges indicated at sentencing the criminal record information on which they were relying but which information later was discovered to be erroneous or to have been misinterpreted by the court.

find that [such fairness] is of constitutional proportions." Not only do we disagree with the New Jersey court concerning the extent to which disclosure is required but, also, it seems illogical to us to deny that the matter is one of constitutional magnitude. Information which can be erroneous and which is vital to the extent of the defendant's sentence is being withheld from him without any countervailing public interest being served. "That which we call a rose by any other name would smell as sweet."[10]

It has been inferred that review of the trial judge's discretion as permitted by certain federal cases interpreting Fed R Crim P § 32(c)[11] without consideration of constitutional issues would in some way simplify appellate review. We fail to see why this should be so. It would appear that the scope of review under a judicial discretion criterion would be broader than one limited to a claim that the defendant was denied his constitutional rights because he was not informed of his prior criminal record as it appeared in the presentence report.

■ Because we require disclosure of such public information, it should not be inferred that we require formal proof supporting it. Nor do we intend that the defendant shall have the right to take testimony controverting such information. We believe adequate protection will be furnished to the defendant if he is allowed to point out to the trial court those factual matters in the part of the presentence report required to be disclosed to him which he considers to be untrue or misleading, leaving it to the trial judge to ascertain the truth or falsity by such means as he deems proper

[10] Romeo and Juliet, Act II, scene 2.

[11] See cases cited in note 6 *supra*.

or, if he chooses, to remove the challenged matter from his consideration.

We have previously held that the provisions of ORS 137.090 and 137.110,[20] which require the examination of witnesses in open court in an aggravation or mitigation of punishment hearing, do not apply to information furnished in presentence reports and that such reports are another way, in addition to direct testimony, by which information can be furnished in such proceedings. *State v. Scott,* 237 Or 390, 397, 390 P2d 328 (1964). Following *Scott,* ORS 137.090 was amended[21] by the inclusion therein of the provisions allowing consideration of presentence reports at hearings in aggravation or mitigation of sentence and permitting the discretionary disclosure of the contents of the reports to counsel for the defendant. However, there is nothing in the legislative history of the amendment which indicates an intention to apply to the information included in the presentence report the provisions of the statute requiring the public testimony of witnesses in the aggravation or mitigation hearings.

■ We hold that it is error not to furnish a defendant with a copy of that part of a presentence report which relates to his prior criminal record.[22] By so

---

[20] ORS 137.110:

"No affidavit or testimony or representation of any kind, verbal or written, can be offered to or received by the court in aggravation or mitigation of the punishment, except as provided in ORS 137.080 to 137.100."

[21] Oregon Laws 1965, ch 400, § 1.

[22] We do not anticipate that this decision, as here, will be given retrospective application in other cases which have been finally decided as of the date of this opinion. *See* De Stefano v. Woods, 392 US 631, 88 S Ct 2093, 20 L Ed 2d 1308 (1968) and Schaeffer, *The Control of "Sunbursts": Techniques of Prospective Overruling,* 42 NYU L Rev 631, 638-39 (1967).

holding, we do not mean to indicate that it is not good practice for a trial judge to disclose the balance of the presentence report, if, in his opinion, there are no valid reasons for its confidentiality.

The sentence imposed upon defendant is set aside and the matter is remanded to the trial court of conviction for the resentencing of petitioner, after that court has first furnished to him the information in his presentence report which relates to his prior criminal record.

McALLISTER, J., concurring in part; dissenting in part.

I concur in that portion of the opinion which holds that the defendant is entitled as a matter of constitutional right to the disclosure of any "public information" which is contained in his presentence report. However, that right will be of no value unless the defendant is permitted to challenge the accuracy of that information. I dissent from that portion of the opinion which holds that the defendant has no right to prove that the "public information" or some portion thereof is false.

TONGUE, J., concurring.

I agree with the result reached by the majority, but disagree with the basis upon which the majority has reached that result.

I believe that it is fair to say that while some other courts have intimated that the refusal of a trial judge to disclose to a criminal defendant the contents of a presentence report may, under some circumstances, violate the constitutional rights of the defendant, this may be the first decision which would squarely so hold. In my judgment, there is good

reason for the hesitance of other courts to hold that a criminal defendant has a constitutional right to know any part of the contents of a pre-sentence report. Once that door is opened, no matter how slightly, it may be extremely difficult to distinguish between the constitutional right of a defendant to see statements in a pre-sentence report relating to his prior convictions and his right to see any and all statements included in such a report.

This court has often stated the rule that a case will not be decided by holding a statute adopted by the legislature to be unconstitutional unless such a determination is necessary to a proper disposition of the case. See *State v. Franzone,* 243 Or 597, 415 P2d 16 (1966); *Dodd v. State Ind. Acc. Com.,* 211 Or 99, 162, 310 P2d 324 (1957); *State ex rel Bushman v. Vandenberg,* 203 Or 326, 329, 276 P2d 432 (1955), among other cases.

The legislature of Oregon, by the adoption of ORS 137.090, has expressly conferred upon the trial judge the discretion whether or not to make available to counsel for the defendant all or any part of a pre-sentence report. In my opinion, however, the discretion conferred upon the trial judge by that statute is a judicial discretion and is thus subject to reversal for abuse.

It is also my opinion that it would be an abuse of judicial discretion for a trial judge to refuse to disclose to counsel for the defendant what the majority describes as "that part of a pre-sentence report which relates to his prior criminal record." Accordingly, I agree with the result reached by the majority, but on a different basis and one which makes it unnecessary to pass upon the constitutionality of ORS 137.090.

The majority opinion rejects the contention that in providing that information included in pre-sentence reports "may be made available to counsel for defendant" ORS 137.090 was intended to confer upon trial courts a judicial discretion which is subject to review by this court for abuse. This may be because the majority apparently construes that statute as conferring upon trial judges an absolute discretion, not subject to review by this court. Thus, the majority says (at p 1695) that "The language was intended to make plain that trial courts *could* make information available, not that they *had to* make it available or be guilty of an abuse of discretion, as has been suggested."

In my opinion, however, all discretion conferred upon a trial judge, whether by statute or by rule of common law, is a judicial discretion and is thus subject to review for abuse of that discretion. Cf. *Guedon v. Rooney,* 160 Or 621, 645, 87 P2d 209 (1939).

The majority also says (at p 1710) "It would appear that the scope of review under a judicial discretion criterion would be broader than one limited to a claim that the defendant was denied his constitutional rights because he was not informed of his prior criminal record as it appeared in the presentence report." This may be a matter on which reasonable minds may differ. Nevertheless, it is my opinion that once the "constitutional right" to any portion of a presentence report is recognized, the problem of denying the exercise of such a "right" to examine other portions of the report becomes much more difficult than under a rule which leaves the entire matter to the exercise of a judicial discretion which is reviewable only for abuse.

This is also consistent with what appears to be the practice of federal courts in the interpretation

of a similar rule of criminal procedure (Fed R Crim P 32(c)), under which it is also provided that the trial judge "may disclose" all or part of a pre-sentence report. *United States v. Dockery,* 145 US App DC 9, 447 F2d 1178, 1183 (DC Cir 1971), cert den, 404 US 950, 92 S Ct 299, 30 L ed 2d 266 (1971); *Good v. United States,* 410 F2d 1217, 1221 (5th Cir 1969), cert den, 397 US 1002, 90 S Ct 1131, 25 L ed 2d 413 (1970); *United States v. Knupp,* 448 F2d 412, 413 (4th Cir 1971).

The majority would dismiss these cases with the following footnote comment (note 6):

> "A federal rule means, of course, what federal courts say it does. We are dealing here with a statute enacted by the Oregon legislature."

Aside from the question whether a statute or, indeed, a constitution may also mean what "courts say it does," the statute involved in this case (ORS 137.080), by providing that the contents of pre-sentence reports "may be made available to counsel for the defendant" clearly confers discretion upon the court to do so.

It may be that the right of a criminal defendant to information in pre-sentence reports is a subject which should be more precisely defined and provided for by statute or by rule of court. Indeed, specific proposals have been made for the revision of state and federal statutes and rules of criminal procedure on this subject, based upon considerable study of this most serious problem. See majority opinion, note 6. In particular, see Part IV, § 4.4, Standards Relating to Sentencing Alternatives and Procedures, American Bar Association Project on Minimum Standards for Criminal Justice (1968). See also discussion in *State v. Kuntz,* 55 NJ 128, 259 A2d 895 (1969).

Thus, this is a most proper subject for consideration by the present Oregon Criminal Law Revision Commission, which is now studying proposals for a complete revision of Oregon's criminal procedure statutes. Until that commission has completed its report, however, and until that report has been considered by the Oregon legislature, I am of the opinion that this is a subject which should be left to the judicial discretion of the trial judge, as presently provided by ORS 137.090, subject to review by this court.

I agree with the majority in its statement that the result reached by it does "not mean * * * that it is not good practice for a trial judge to disclose the balance of the pre-sentence report if, in his opinion, there are not valid reasons for its confidentiality." Again, however, I am of the opinion that under the provisions of ORS 137.090 this is a matter within the judicial discretion of the trial court, subject to review by this court for possible abuse of that discretion.