EL PUEBLO DE PUERTO RICO, apelado, *v.* FÉLIX MANUEL BOU NEVÁREZ, acusado apelante.

*Número:* CR-79-97      *Resuelto:* 23 de junio de 1981

*Eugenio Rivera Lozada,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El apelante fue convicto tras juicio por jurado por el delito de homicidio voluntario e infracción al Art. 8 de la Ley de Armas. Por tribunal de derecho fue declarado culpable de infringir también el Art. 6 de tal ley.

El caso se refirió al Oficial Probatorio. Al rendirse el informe correspondiente, titulado "Informe Pre-Sentencia", al igual que en el acto de la lectura de sentencia, el abogado del apelante intentó infructuosamente conocer el contenido del informe. El 26 de noviembre de 1979 se condenó al reo a cumplir penas consecutivas de cuatro a siete años por el delito de homicidio, de dos a cuatro años por la infracción al Art. 8 de la Ley de Armas y de seis meses por la infracción al Art. 6.

Al día siguiente el acusado solicitó la reconsideración de la sentencia a fines de rebajar las penas, tornarlas en concurrentes y obtener los beneficios de la libertad a prueba. Se querelló en específico de que no se le hubiera dado a él o a su abogado acceso al informe pre-sentencia. El tribunal declaró sin lugar la reconsideración.

El apelante alega esencialmente ante este foro que la negativa a darle a conocer tal informe y a ofrecerle oportunidad de rebatirlo viola el debido proceso de ley y que erró el tribunal de instancia al no archivar los casos en la vista preliminar. El segundo planteamiento es frívolo, ya que los autos revelan que la dilación ocurrida se debió al propio apelante, quien por sus actuaciones renunció su derecho a la celebración de un juicio rápido. Respecto al primer señalamiento, examinemos inicialmente la situación estatutaria y otros aspectos del caso antes de resolver la procedencia de discutir a fondo la cuestión constitucional.

El Art. 59 del Código Penal de 1974, 33 L.P.R.A. sec. 3283, aprobado por la Ley Núm. 115 de 22 de julio de tal año, ordena:

> La imposición de la pena requerirá un informe pre-sentencia, el cual será mandatorio en los delitos graves y a discreción del Tribunal en los delitos menos graves. Estos informes estarán a disposición de las partes.

El Art. 284 del Código, 33 L.P.R.A. sec. 4628, dispuso que éste comenzaría a regir a los seis meses de su aprobación,

a excepción de ciertos artículos, entre los cuales no se hallaba el citado.

La Ley Núm. 146 de 3 de julio de 1975, no obstante, pospuso la vigencia del referido Art. 59 hasta el 22 de julio de 1977. Entre otras razones, la exposición de motivos de la ley señaló que la necesidad de un plan intensivo de reclutamiento especializado requería retrasar la vigencia de todo lo referente al informe pre-sentencia. La Ley Núm. 17 de 21 de julio de 1977 estableció a su vez, por los mismos motivos, el 22 de julio de 1979 como la nueva fecha de vigencia. Esta fecha se extendió hasta el 22 de julio de 1981 por la Ley Núm. 76 de 18 de junio de 1979. Por último, la Ley Núm. 101 de 4 de junio de 1980 decretó que el Art. 59 comenzaría a regir a los nueve meses de la aprobación de la ley que establece el sistema de sentencia determinada, Ley Núm. 100 de 4 de junio de 1980, lo cual adelanta a marzo de 1981 la fecha de vigencia de la referida disposición del Código Penal.

De lo anterior se desprende que a la fecha del pronunciamiento de sentencia en este caso el Art. 59 del Código Penal no estaba en vigor y no podía reclamarse como base para exigir que el informe pre-sentencia se pusiese a disposición de las partes. Veamos si otras disposiciones de ley proveen un fundamento legal adecuado.

Al día siguiente de aprobarse el Código Penal, la Ley Núm. 172 de 23 de julio de 1974 adicionó la Regla 162.1 a las Reglas de Procedimiento Criminal, a todas luces para complementar lo dispuesto por el Art. 59 del Código. La nueva Regla 162.1 decretaba originalmente. [1]

Regla 162.1—Informe Pre-Sentencia.—

El tribunal, antes de dictar sentencia en los siguientes casos, deberá tener ante sí un informe que le haya sido ren-

---

[1] Las enmiendas sufridas desde 1974 por la ley original no afectan las disposiciones que aquí nos ocupan. La principal, de orden indirecto, fue la sustitución del Centro de Diagnóstico, Clasificación y Tratamiento, efectuada por la Ley Núm. 21 de 10 de julio de 1978.

dido, después de haberse practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona convicta, que le permita emitir una decisión racional de sentencia:

(1) En todos los delitos graves, excepto asesinato en primer grado.

El tribunal requerirá de la Administración de Corrección un informe de evaluación hecho por el Centro de Clasificación, Diagnóstico y Tratamiento de dicha agencia, para que forme parte del informe pre-sentencia.

(2) En los delitos menos graves.

El tribunal podrá utilizar como informe pre-sentencia el "Formulario Corto de Información" requerido por la Regla 162.2 excepto cuando las circunstancias particulares del caso ameriten información más amplia, en que podrá solicitarse, si a juicio del tribunal es necesaria, la evaluación hecha por el Centro de Clasificación, Diagnóstico y Tratamiento de la Administración de Corrección. Los informes pre-sentencia se tramitarán en el plazo más breve posible y de no estar disponible algún informe dentro de los términos que establece la Regla 162, el tribunal pospondrá el acto de dictar sentencia a fin de recibir dicho informe.

Nada de lo dispuesto en esta regla se entenderá que limita la facultad del tribunal para enmendar su sentencia conforme a lo dispuesto en estas reglas.

El tribunal dará acceso a los informes pre-sentencia a los acusados o peticionarios, a sus abogados y al ministerio fiscal, a los fines de que éstos puedan ser controvertidos mediante la presentación de prueba.

Sólo se mantendrá como confidencial aquella información que hubiere sido prestada por personas particulares a quienes se les hubiere ofrecido dicha garantía.

Esta regla habría de regir a los noventa días de su aprobación, esto es, el 23 de octubre de 1974. Al igual que sucedió con el Código Penal, pronto comenzó a extenderse su vigencia. La Ley Núm. 3 de 17 de diciembre de 1974 estableció el 1 de agosto de 1975 como la nueva fecha. La Ley Núm. 7 de 15 de julio de 1975 dispuso que la regla no entraría en vigor hasta el 1 de agosto de 1977, fecha que se cambió al 1 de agosto de 1979 por la Ley Núm. 16 de 21

de julio de 1977. La Ley Núm. 103 de 4 de junio de 1980 proveyó finalmente que la Regla 162.1 comenzará a regir a los nueve meses de aprobada la legislación sobre la sentencia determinada, la misma fecha de vigencia del Art. 59 del Código Penal.

Se habrá advertido que las extensiones a la fecha de vigencia del Art. 59 no marchan enteramente a compás con las de la Regla 162.1. En ambos casos se permite la creación de brechas entre algunas fechas de vigencia y la aprobación de las leyes para extenderlas. De este modo aparece que entre el 22 de enero de 1975 y el 2 de julio de ese año el Art. 59 estuvo en vigor supuestamente, aunque no la Regla 162.1. Lo mismo ocurre, a la inversa, en varias ocasiones con la Regla 162.1. Lo que más nos interesa para fines de este caso es que entre el 1 de agosto de 1979 y el 3 de junio de 1980 la lectura literal de los textos indica que la Regla 162.1 estuvo en vigor a la fecha en que se dictó sentencia en esta causa, pero el Art. 59 no.

▅▅▅ ¿Qué significa esta curiosa situación? ¿Significa que cada vez que no se enmendó a tiempo la legislación correspondiente para posponer su vigencia, creándose el inevitable lapso, toda persona sentenciada durante su término tiene derecho a que se revoque su condena y se le sentencie nuevamente? A nuestro juicio no. No podemos imputarle a la Asamblea Legislativa, conforme el historial de las dos disposiciones discutidas, el *brutum fulmen* de posponer la vigencia del Art. 59 del Código Penal, lo que tiene el efecto de no hacer disponible el informe presentencia, y a la par ordenar lo contrario. Cuando existen leyes directamente contrapuestas es nuestro deber examinar las circunstancias que rodean su aprobación para determinar el verdadero propósito legislativo. A veces es posible armonizarlas; en otras ocasiones no. La repetida posposición de la vigencia de tanto el Art. 59 como la de la Regla 162.1 demuestra la intención de no poner en vigor el principio que ambas disposiciones encarnan hasta tanto se

cumplan ciertas condiciones previas que a juicio de la Asamblea Legislativa deben mediar. Esta conclusión se refuerza por la nueva posposición que sufre en 1980 la Regla 162.1 después del último hiato ocurrido. Las circunstancias en que se producen éste y otros lapsos claramente apuntan a que su creación se debió más a la inadvertencia y el descuido que a la intención deliberada de poner en vigor los principios representados por las disposiciones objeto de análisis. Tales hiatos no ofrecen fundamento suficientemente sólido para reclamar que todos los individuos sentenciados en Puerto Rico durante esos intervalos sean resentenciados.

Dada la conclusión anterior debemos considerar la cuestión constitucional. En *Pueblo* v. *Martínez Rivera*, 99 D.P.R. 568, 575–76 (1971), resolvimos que el informe del oficial probatorio es confidencial. Los precedentes citados en *Martínez Rivera* proveen una base endeble para la decisión. [2] Martínez Rivera se apoya principalmente en dos decisiones del Tribunal Supremo de Estado Unidos, *Williams* v. *New York*, 337 U.S. 241 (1949), y *Gregg* v. *United States*, 394 U.S. 489 (1969). [3] Ninguno de estos casos resuelve el problema que nos ocupa. Fennell y Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv. L. Rev. 1613, 1630 *et seq.* (1980); Guzmán, *Defendant's Access to Presentence Reports in Federal Criminal Courts*, 52 Iowa L. Rev. 161, 172–73 (1966); Katkin, *Presentence Reports: An Analysis of Uses, Limitations and Civil Liberties Issues*, 55 Minn. L. Rev. 15, 25 (1970); Note, *Disclosure of Presentence Reports in Federal Court:*

---

[2] Uno de los estudios que precedieron la reforma judicial de 1974 critica severamente las bases de *Martínez Rivera*. Negrón García *et al.*, *Estudio del Sistema Correccional de Puerto Rico*, s.f., mimeo, pág. 143 *et seq.*

[3] Otra jurisprudencia citada no fortalece esa base. Lo que sostiene, por ejemplo, *Commonwealth* v. *Martin*, 244 N.E.2d 303, 308 (Mass. 1969), contrario a lo aseverado en la opinión, es que "la administración de la justicia mejoraría con el uso liberal y generoso del poder para hacer disponible el informe".

*Due Process and Judicial Discretion*, 26 Hastings L.J. 1527, 1535 (1975). Por el contrario, se estima que *Townsend* v. *Burke*, 334 U.S. 736 (1948) y su progenie proveen "un marco para el reconocimiento de un derecho a la revelación significativa de los informes presentencia". Fennell y Hall, *supra* pág. 1637. Para el reconocimiento expreso de tal derecho constitucional, con debidas salvaguardas, véanse: Harkness, *Due Process in sentencing: A Right to Rebut the Presentence Report?*, 2 Hastings Const. L.Q. 1065, 1072 (1975); Note, *Disclosure of Presentence Reports: A Constitutional Right to Rebut Adverse Information by Cross-Examination*, 3 Rutgers Camden L.J. 111, 114 *et seq.* (1971); Note, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv. L. Rev. 821, 835 *et seq.* (1968); Wyzanski, *A Trial Judge's Freedom and Responsibility*, 65 Harv. L. Rev. 1281, 1291–92 (1952); Katkin, *supra*, págs. 24–25; Note, *Disclosure of Presentence Reports in Federal Court: Due Process and Judicial Discretion*, supra, pág. 1540.

En treinta y un estados de Estados Unidos se permite o requiere, bajo diversas condiciones, la disponibilidad del informe pre-sentencia al acusado o su abogado. McLauchlan, *Privacy and the Presentence Report*, 54 Ind. L.J. 347, 358 *et seq.* (1979). En Inglaterra existe un derecho incondicional a recibir copia completa del informe. *Powers of Criminal Courts Act 1973*, 43 Halsbury's Statutes of England, 3ra ed., s. 46, págs. 339–40.

Al aprobar el Código Penal de 1974, Puerto Rico se incorporó a esta tendencia creciente, aun antes que varias otras jurisdicciones. Al año siguiente el Congreso enmendó la Regla 32(c)(3) de Procedimiento Criminal para ordenar que, de solicitarlo el acusado o su representante, se le permitiese acceso al informe, sujeto a las condiciones que se enumeran en la nota al calce. (⁴)

---

(⁴) Esta regla federal provee, en parte:

"(A) Before imposing sentence the court shall upon request permit the

Aun en ausencia de estatuto, varios tribunales han sostenido, [5] con diversos argumentos, el derecho del acusado a examinar el informe pre-sentencia, sujeto a determinadas restricciones. En *State* v. *Kunz*, 259 A.2d 895, 903-04 (N.J. 1969), por ejemplo, se derivó el derecho de principios "rudimentarios de justicia" y se afirmó que un acto de lectura de sentencia en que se le niegue al acusado todo acceso al informe presentencia "no concuerda con concepto racional alguno de la debida administración de la justicia". Poco tiempo después, en *Buchea* v. *Sullivan*, 497 P.2d 1169 (Ore. 1972), se resolvió que el acusado tiene el derecho, aunque no irrestricto, a revisar el informe, por mandato de las cláusulas sobre el debido proceso de ley y el derecho a asistencia de abogado de la Constitución de Estados Unidos. Véanse: *State* v. *Pierce*, 494 P.2d 696 (Ariz. 1972); *Commonwealth* v. *Phelps*, 301 A.2d 678 (Penn. 1973); *People* v. *McFarlin*, 208 N.W.2d 504 (Mich. 1973); *State* v. *Rolfe*, 444 P.2d 428 (Idaho 1968).

La doctrina, la legislación y la jurisprudencia citadas llegan al mismo resultado que recomiendan prestigiosos

---

defendant, or his counsel if he is so represented, to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons; and the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

"(B) If the court is of the view that there is information in the presentence report which should not be disclosed under subdivision (c)(3)(A) of this rule, the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant or his counsel an opportunity to comment thereon. The statement may be made to the parties in camera.

"(C) Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government."

[5] Existe abundante jurisprudencia en contrario, aunque no de cuño reciente. Negrón García *et al, op. cit.*, pág. 144.

estudios. American Law Institute, *Model Penal Code*, Proposed Official Draft, 1962, sec. 7.07(5); President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society*, 1967, págs. 144–45; President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: The Courts*, 1967, pág. 20; American Bar Association, *Project on Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures*, Approved Draft, 1968, sec. 4.4.

De lo anterior no se desprende automáticamente que existe en Puerto Rico un derecho, ilimitado o limitado, retroactivo o prospectivo, a que el acusado o su representante legal pueda examinar el informe del oficial probatorio que pueda preceder al pronunciamiento de la sentencia. Hay varias clases de derechos humanos en lo que toca a la forma de cobrar plena vida. La gran mayoría de estos derechos adquiere fuerza de por sí tan pronto se les consigna en la Constitución. Otros logran que se les reconozca tras un largo proceso de interpretación por los tribunales. Otros exigen legislación para trascender su condición latente y entrar en vigor de lleno. En este último caso, la realidad impide, como ha sucedido en Estados Unidos con el derecho a la integración racial de las escuelas, que la proclamación del derecho conlleve su aplicación instantánea.

El derecho reclamado en este litigio pertenece a este último orden. Se trata de un derecho complejo. Los intereses a reconciliar son múltiples. De un lado es innegable que condenar personas sobre la base de información secreta ofende principios elementales de justicia. El derecho a asistencia de abogado queda en tales circunstancias vacío de contenido. ¿Cómo puede cerciorarse el abogado de que los datos ante el juez son ciertos, que la sentencia impuesta es justa? Es igualmente claro que penalizar a alguien sobre la base de información falsa viola el mandato de que se obedezca el debido proceso de

ley. Del otro lado, es vital que las fuentes de información del Estado no se sequen, que no se afecte la seguridad de ciertos informantes. La Regla 162.1 de Procedimiento Criminal intenta armonizar al respecto, en forma enteramente razonable, los intereses en pugna. De un lado ordena en términos generales el acceso a los informes presentencia, a la par que se garantiza la confidencialidad de las fuentes de información a quienes se les ha ofrecido tal garantía. En otras jurisdicciones se han ensayado otras formas de lograr la armonía.

■ El derecho reclamado no es solamente complejo, sino necesariamente latente, ya que depende del establecimiento y desarrollo de toda una estructura administrativa que lo torne en realidad. Por tal razón consideramos que las secs. 7 y 11 del Art. II de la Constitución del Estado Libre Asociado requieren el reconocimiento del derecho del acusado y su abogado a obtener acceso al informe pre-sentencia, sujeto a las condiciones razonables que imponga o pueda imponer la Asamblea Legislativa, pero que tal derecho no es de aplicación instantánea. Resolvemos que las posposiciones de su vigencia efectuadas hasta ahora por la Asamblea Legislativa son explicables y por ende válidas. La continuada posposición del reconocimiento de este derecho por tiempo irrazonable crearía, no obstante, serias dificultades constitucionales. Debe procederse a tal reconocimiento con la celeridad debida.(6)

Por las razones expuestas, *se confirman las sentencias apeladas.*

El Juez Asociado Señor Negrón García emitió opinión separada, concurriendo con el resultado. El Juez Asociado Señor Rigau no intervino. El Juez Asociado Señor Díaz Cruz no participó en la decisión.

---

(6) No nos estamos pronunciando en este caso sobre la situación de derecho existente después de la vigencia del sistema de sentencia determinada, Ley Núm. 100 de 4 de junio de 1980 y la Ley Núm. 101 de 4 de junio de 1980.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 23 de junio de 1981

El rasgo definidor que impulsa el derecho al debido proceso de ley exige que de alguna manera la persona concernida sea tomada en cuenta cuando han de realizarse adjudicaciones o tomarse acciones gubernamentales, legislativas o ejecutivas que puedan adversamente afectarle. [1]

Con esta nota sobresaliente evaluamos la tesis central del apelante Bou Nevárez de que la negativa de la sala de instancia de sentenciarle, sin permitirle conocer el contenido del informe pre-sentencia, viola ese derecho. En esa tarea hemos de ponderar principios de raíces constitucionales que, como veremos, se entremezclan con importantes argumentos prácticos y de sentido común.

La ausencia de análisis autóctono nos mueve a referirnos a la literatura jurídica accesible en la jurisdicción norteamericana. [2] Existen diversas posturas, entre las cuales

---

[1] Muy instructivo estimamos el análisis del Profesor Tribe en su obra *American Constitutional Law*, Mineola, New York, Foundation Press, 1978, sec. 10-7, pág. 501 *et seq*. En el curso del mismo, cita las orientadoras palabras del Juez Frankfurter:

". . . la validez y autoridad moral de una conclusión en gran medida depende de la manera en que se llegó a ella. . . . Ningún instrumento mejor ha sido diseñado para arribar a la verdad que el ofrecer a una persona en peligro de sufrir una pérdida seria, notificación del caso en su contra y oportunidad para enfrentarlo. Tampoco se ha encontrado una mejor manera para generar el sentimiento tan importante para un gobierno popular, de que se ha hecho justicia." (Traducción nuestra.)

[2] Fennell y Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv. L. Rev. 1613 (1980); Guzmán, *Defendant's Access to Presentence Reports in Federal Criminal Courts*, 52 Iowa L. Rev. 161 (1966). Katkin, *Presentence Reports: An Analysis of Uses, Limitations and Civil Liberties Issues*, 55 Minn. L. Rev. 15 (1970). Note, *Disclosure of Presentence Reports in Federal Court: Due Process and Judicial Discretion*, 26 Hastings L.J. 1527 (1975); Harkness, *Due Process in Sentencing: A Right to Rebut the Presentence Report?*, 2 Hastings Const. L. Q. 1065 (1975); Note, *Disclosure of Presentence Reports: A Constitutional Right to*

figuran algunos comentaristas e instituciones que tienden a favorecer ese derecho de manera absoluta. Por lo general, suelen apoyar no sólo su examen, sino que se provea al acusado la oportunidad de ofrecer evidencia en contra del informe, contrainterrogar las fuentes de información y, en casos apropiados, al propio oficial probatorio en cuanto a la validez de sus conclusiones y la precisión en los términos técnicos o científicos utilizados. En fin, controvertir la cualificación pericial del trabajo que dicho funcionario realiza. Desde esta posición extrema de descubrimiento absoluto con todas las garantías ordinarias del debido proceso de ley, observamos una gama de variaciones más tímidas que reconocen las inconveniencias y dificultades que esa posición acarrea. Una de carácter intermedio, acepta la necesidad de cierto grado de flexibilidad en la aplicación del derecho al acceso y de las garantías ordinarias de debido proceso en lo que respecta a la forma de poder controvertir el informe. Así, desde un extremo contrario, pueden palparse posiciones de oposición tajante a que los informes sean mostrados al acusado o a su abogado. Otras concederían un acceso al informe y oportunidad para controvertirlo, de manera limitada, rechazando cualquier posibilidad de que se estime mandatorio ofrecer oportunidad de contrainterrogar las fuentes y al oficial probatorio.

I

A la luz de ese abanico de posibilidades examinemos los debates que han caracterizado el desarrollo del derecho a tener acceso y oportunidad de rebatir el informe.

Los que propulsan tal reconocimiento de manera amplia han tenido que librar una batalla contra la práctica sumamente entronizada de los tribunales de no permitir

*Rebut Adverse Information by Cross-Examination*, 3 Rutgers Camdem L. J. 111 (1971); Note, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv. L. Rev. 821 (1968).

disposición alguna del informe. Gran oposición se presentó siempre, incluso por parte de jueces y oficiales probatorios, contra cualquier forma de revelación, aun cuando fuere discrecional. El Comité Asesor de Reglas de Procedimiento Criminal para el Tribunal Supremo intentó erigir estatutariamente tales derechos realizando concesiones hasta que, en una entrega a la oposición, llegó a elevar a norma legislada sólo el estado existente de discreción en los jueces para no revelar el informe, aunque alentando el que ejerciera positivamente tal discreción, concediendo el acceso. (³)

Recientemente, sin embargo, esos derechos han sido estatuidos en la Regla 32(c)(3) de Procedimiento Criminal federal en forma condicionada, con ciertas excepciones, facilitando al acusado un resumen de la información cuando por alguna de tales excepciones la información no debe mostrársele. En adición, se provee oportunidad de comentarlo y a discreción del tribunal, presentar testimonios y prueba para rebatirlo. (⁴) La regla representó un

(³) Para un recuento más detallado del desarrollo expuesto, Fennell y Hall, *op. cit.*, págs. 1630 a 1634.

(⁴) "(A) Antes de dictar sentencia el tribunal deberá, previa solicitud al efecto, permitir al acusado o a su abogado, si lo tuviera, leer el informe de la investigación pre-sentencia *excluyendo* cualquier recomendación en cuanto a la sentencia, pero no deberá permitirlo si a su juicio el informe contiene: algún diagnóstico que pueda interrumpir significativamente cualquier programa de rehabilitación, fuentes de información obtenidas bajo promesa de mantener la confidencialidad, o cualquier otra información que de ser divulgada perjudicaría, físicamente o de cualquier otra manera, al acusado o a otras personas; además, el tribunal le dará al acusado o a su abogado la oportunidad de comentar sobre dicho informe, y, a discreción del tribunal, presentar testimonio u otra información relacionada con cualquier supuesto error de los hechos contenidos en el informe pre-sentencia.

"(B) Si el tribunal entiende que el informe con antelación a la sentencia contiene información que no debe ser divulgada bajo las disposiciones del inciso (c)(3)(A) de esta regla, entonces en lugar de poner el informe o parte del mismo a la disposición de acusado deberá hacer un resumen oral o por escrito de la información que aparece en dicho informe y que servirá de base para dictar la sentencia; también deberá ofrecer al acusado o su abogado una oportunidad para hacer comentarios sobre el mismo. La presentación del resumen a las partes podrá hacerse en Cámara.

(C) Cualquier material que se haya puesto a la disposición del acusado o de

compromiso o punto de balance de los intereses contrapuestos. (5)

De un lado, la pugna ha girado básicamente en torno al convencimiento de que debe predominar el interés en obtener información completa para sentenciar y cumplir cabalmente con los fines rehabilitativos de una pena individualizada y que para ello es necesaria la confidencialidad del informe. De otro lado, el convencimiento opuesto de que debe preservarse, con preferencia, el interés en que el informe cuente con información exacta, precisa y confiable.

Los que objetan a que se revele el contenido del informe arguyen que de no proveerse garantías de confidencialidad, las fuentes de información necesarias se secarían. Argumentan que se obstruiría la labor de individualizar la pena, por miedo de los informantes a posibles venganzas por parte del acusado, especialmente en casos de familiares cercanos, amigos o vecinos u otros miembros de la comunidad o por reparos de algunas otras posibles fuentes a cooperar con información si no existen tales garantías. Suponen que se violaría la relación de confidencialidad del oficial y sus informantes, así como la de éste con el convicto, por los posibles resentimientos que pudieran generarse al conocer que el oficial recomendó una disposición más severa de su caso que la determinada por el juez. Piensan que de advenir el acusado en conocimiento de aquellas partes del informe relativas al diagnóstico, ello le perjudicaría, llevándolo posiblemente a rechazar violentamente la clasificación de su personalidad que allí de él se hace.

También ha sido fuerte motivo de oposición el temor de que ello cause dilación y retraso en los procedimientos de imposición de sentencia y tenga como consecuencia la

su abogado también deberá ser puesto a la disposición del fiscal." (Traducción y énfasis nuestros.)

(5) Fennell y Hall, *op. cit.*, pág. 1634.

creación de una nueva vista o procedimiento con todas las garantías para determinar cada hecho de que consta el informe, con derecho a contrainterrogar a los informantes y al oficial. Una importante premisa —que se dice ha sido poco articulada— es la renuencia de los oficiales a someterse a los rigores de tal examen y la posibilidad de que ello los inhiba de incluir información que pueda sujetarlos a ese proceso, lo que a su vez se piensa que afectaría la calidad y carácter completos del informe.

Los que otorgan predominio al interés en que la información que sea usada por el juez para sentenciar sea exacta, cierta, precisa y confiable, aducen que la confidencialidad lo que hace es permitir el paso de información prejuiciada y poco confiable. Aducen que el interés en información completa no necesariamente requiere que se brinde confidencialidad, ya que el juez viene obligado a hacer una evaluación de la confiabilidad de la información, y la obtenida bajo promesa de confidencialidad no está exenta de ese escrutinio, por lo que, en última instancia, puede que no sea utilizada. Acentúan que la sociedad también tiene un interés en que se sentencie a las personas sobre la base de información confiable.

Se aprecia también que el problema de que los informantes potenciales se nieguen a hablar si saben que pueden ser llamados ante el tribunal para ser contrainterrogados es una circunstancia que puede ocurrir igual con respecto al juicio en su fondo previo, lo cual no suele ocurrir. Se refuta el argumento de que las fuentes se secarían con experiencia en contrario de otras jurisdicciones. Ciertamente, con el número alto de suspensiones y la renuencia de muchos testigos a comparecer ante los tribunales en Puerto Rico, este factor resulta de extrema importancia para la configuración final que deberá tomar este derecho en esta jurisdicción.

El parecer de este grupo de propulsores es en el sentido de que el revelar el informe al acusado no le perjudica,

sino que más bien le beneficia, pues sentiría que fue sentenciado utilizándose información que se le dio a conocer y no arbitrariamente sobre la base de información secreta. Arguyen que constituye mayor impedimento para la rehabilitación el sentimiento de rebeldía que le puede ocasionar la imposición de una pena severa de manera arbitraria. Según éstos, el argumento de que se afecta la relación del oficial probatorio con el convicto choca con la realidad de que muchas veces los oficiales alientan entre sí el mostrarle los informes al convicto, porque piensan que ello propicia una mejor relación.

Por último, los favorecedores de divulgar el informe señalan igualmente hacia experiencias de algunos tribunales y jurisdicciones que, teniendo como práctica la revelación del informe, no han experimentado por ello atrasos y dilación en los procedimientos. Exaltan la posibilidad de que el dar a conocer el informe puede ayudar a delimitar, con antelación razonable a la imposición de la sentencia, las cuestiones a discutirse en ese procedimiento y permite que el abogado se prepare mejor para presentar atenuantes o refutar agravantes, ahorrando ello tiempo al tribunal.

La oposición o favorecimiento del derecho al acceso también ha dependido de la visión particular que se tenga de si los oficiales descargan adecuadamente sus funciones, estimando, según participen de una u otra visión, que puede o no puede confiarse a ellos el interés en la exactitud y precisión de la información.

## II

Resulta indudable que ambos lados han hecho señalamientos de contundencia que no son exhaustivos. [6] Inde-

---

[6] Véase, en general: Note, *Procedural Due Process at Judicial Sentencing for Felony*, supra, págs. 836–841; Katkin, *op. cit.*, págs. 15–20; Note, *Disclosure of Presentence Reports: A Constitutional Right*, supra, pág. 123 *et seq.*; Harkness, *op. cit.*, págs. 1067–1071; Guzmán, *op. cit.*, págs. 167–171.

pendientemente de las preferencias subjetivas que se hayan manifestado, o de las experiencias de otras jurisdicciones, es menester enfrentarnos directamente con el problema de si los principios imbuidos en el debido proceso requieren el reconocimiento de ese derecho, la oportunidad de refutarlo, y en qué medida.

No albergamos duda de que la cláusula de debido proceso[7] requiere, en cierta extensión, algunas salvaguardas para el acusado. Son muchas, y de gran importancia, las repercusiones dimanantes de un informe presentencia. Del mismo dependen variadas decisiones de concebible impacto adverso para su libertad, no sólo en la etapa de imposición de sentencia, sino también en otras tales como la determinación de si procede o no su suspensión, o la de elegibilidad para libertad a prueba, o la revocación de esos beneficios. En éstas, el interés de libertad del acusado es similar a aquel relacionado con la determinación correcta de una pena que caiga dentro de los límites establecidos por el legislador.[8]

Somos de opinión de que debe brindarse al acusado participación en esos procesos.

Ahora bien, debemos reconocer que el debido proceso no conlleva automáticamente la adhesión a la etapa de que se trate, de toda la panoplia de garantías tradicionalmente asociadas con esa cláusula.[9] Los requerimientos de esa cláusula varían conforme a las circunstancias,[10] y, en estos casos, es de gran importancia el grado o medida de adversidad de las consecuencias que se aparejen con respecto al interés personal que se intenta proteger.

---

[7] Art. II, Sec. 7, Constitución del Estado Libre Asociado.

[8] Fennell y Hall, *op. cit.*, págs. 1628–29; véanse: Harkness, *op. cit.*, págs. 1065–1066; Katkin, *supra*, págs. 15–17; Note, *Procedural Due Process at Judicial Sentencing for Felony*, supra, pág. 821.

[9] Fennell y Hall, *op. cit.*, pág. 1638–1639.

[10] *Domínguez Talavera* v. *Tribunal Superior*, 102 D.P.R. 423 (1974); *Pueblo* v. *Suárez Sánchez*, 103 D.P.R. 10 (1974); *Pueblo* v. *Andreu González*, 105 D.P.R. 315 (1976).

El Tribunal Supremo de los Estados Unidos no se ha enfrentado directamente al punto de si existe derecho constitucional a la revelación del informe. Los que luchan por que se reconozca lo apuntalan sobre preceptos constitucionales invocando la autoridad de *Townsend* v. *Burke*, 334 U.S. 736 (1948). En éste, el acusado fue sentenciado sin el beneficio de estar asistido por abogado. Se le tomaron en cuenta algunos arrestos como convicciones, que constaban por error en el informe. El juez comentó voluntariamente sobre esas "convicciones". El Tribunal Supremo revocó la sentencia al concluir que habiéndose utilizado información errónea al sentenciarlo, se violó su derecho al debido proceso de ley. Implícito en esa decisión hay un razonamiento en el sentido de que de haber estado asistido por abogado, éste se hubiera encargado de velar porque no se utilizara información incorrecta e imprecisa.

Con posterioridad ha quedado claro que el derecho a tener acceso al informe *no* necesariamente conlleva todas las garantías, tipo juicio, tales como el contrainterrogatorio y el derecho amplio a refutar, ni una vista formal para ello. *Williams* v. *New York*, 337 U.S. 241 (1949). En esta opinión se acentúa la gran sustancialidad e interés en poder adquirir información completa para sentenciar a un acusado y, por ende, se reconoce la utilidad de garantizar la confidencialidad de las fuentes de información. Se hace acopio de los argumentos en cuanto a la dilación y las inconveniencias que crearía reconocer esos derechos en una forma amplia en la etapa de sentencia. (11)

### III

Con el beneficio del análisis que antecede, (12) nos senti-

---

(11) Para otras decisiones que pueden arrojar luz en cuanto a si el derecho de acceso al informe y a poder refutarlo al amparo de la cláusula de debido proceso, véanse: *Kent* v. *United States*, 383 U.S. 541 (1966); *Mempa* v. *Rhay*, 389 U.S. 128 (1967); *Specht* v. *Patterson*, 386 U.S. 605 (1967); *United States* v. *Tucker*, 404 U.S. 443 (1972); *Gardner* v. *Florida*, 430 U.S. 349 (1977).

(12) Para el análisis de los casos, según ha sido expuesto en el texto, con-

mos inclinados al reconocimiento de una exigencia de debido proceso de ley con apoyo en principios de justicia básicos que brinden, al acusado un acceso restringido al informe con oportunidad de rebatirlo.

En cuanto a la medida de acceso al informe y la oportunidad de refutarlo, nos parecen parámetros razonables los perfilados en dos piezas legislativas: en el Art. 59 del Código Penal aprobado mediante la Ley Núm. 115 de 22 de julio de 1974 que — aunque *no* está vigente— enmarca y orienta el recto discernimiento judicial en estos casos:

> La imposición de la pena requerirá un informe pre-sentencia, el cual será mandatorio en los delitos graves y a discreción del Tribunal en los delitos menos graves. Estos informes estarán a disposición de las partes. 33 L.P.R.A. sec. 3283.

Y en la Regla 162.1 de Procedimiento Criminal —adicionada al día siguiente de aprobarse el Código, mediante la Ley Núm. 172 de 23 de julio de 1974— particularmente sus dos últimos párrafos:

> El tribunal dará acceso a los informes pre-sentencia a los acusados o peticionarios, a sus abogados y al ministerio fiscal, a los fines de que éstos puedan ser controvertidos mediante la presentación de prueba.
>
> Sólo se mantendrá como confidencial aquella información que hubiere sido prestada por personas particulares a quienes se les hubiere ofrecido dicha garantía.

La utilización de los términos "a disposición" y "dar acceso" en forma genérica, conlleva un reconocimiento y un llamado a la discreción necesaria del juzgador para que éste establezca la mejor forma de dar a conocer su contenido sin perjudicar otros intereses y consideraciones de gran importancia en la política judicial. Visualizamos que

súltese: Fennell y Hall, *op. cit.*, págs. 1637–1640; Katkin, *op. cit.*, pág. 24 *et seq.*; Note, *Procedural Due Process at Judicial Sentencing for Felony*, supra, págs. 826–829; Note, *Disclosure of Presentence Reports: A Constitutional Right*, supra, pág. 113 *et seq.*; Harkness, *op. cit.*, págs. 1071–1077.

ello quedaría condicionado a que de haberse prestado garantía de confidencialidad, no habría acceso a esa información en aras de proteger a los informantes.

En cuanto a la oportunidad de controvertirlo, no creemos que se haya tenido en mente una vista formal con la aplicación de las garantías ordinarias. Concebimos sólo la oportunidad de que el acusado pueda ofrecer cierta prueba que contribuya a una decisión informada en el acto de sentencia. Advertimos que la Regla 162.1 no establece un derecho a contrainterrogar las fuentes informantes ni al oficial probatorio en ningún caso.

A nuestro juicio, la concesión de esos derechos de manera limitada tiende a contrarrestar y balancear la fuerza de aquellos argumentos que señalan las inconveniencias y dificultades que conllevaría el otorgar todas las garantías de un juicio. El conceder la oportunidad de contrainterrogar a los informantes y al oficial, además de no ser deseable por razones obvias, debido al efecto negativo que tendría sobre la accesibilidad de la información necesaria para que se logren los objetivos del informe, causaría demasiada dilación y retraso en los procedimientos post-sentencia. En el estado actual, no podrían ser soportadas por nuestro ya recargado y críticamente lento sistema de justicia criminal.

Finalmente, recomendamos se establezca, como práctica rutinaria, que en los casos apelados se eleve ante este Tribunal, como parte de los autos originales, el informe pre-sentencia independientemente de que el apelante cuestione la pena impuesta.

En resumen, propulsamos el desarrollo, sobre la base de la discreción judicial, de un enfoque flexible que, aunque tendiente a conceder siempre en alguna medida acceso y oportunidad de refutar, permita al juez ser selectivo en cuanto a la mecánica y operación procesal de esos derechos, de modo que puedan tomarse determinaciones que armonicen los intereses en pugna y pueda retenerse

un control efectivo de los procedimientos para evitar dilaciones. [13]

Este derecho —a ser implementado por la Asamblea Legislativa— por razones obvias debería tener carácter prospectivo y aplicarse a procedimientos de sentencia iniciados con posterioridad a la promulgación y aprobación del estatuto.

Por las razones expuestas concurrimos en el resultado.

---

[13] Nos parece que la regla federal puede servir de buena guía en cuanto a qué información puede ofrecerse y cuál no es aconsejable que sea ofrecida. Provee también la alternativa de un resumen cuando, por otras razones, no se puede proporcionar la información solicitada.